### WATERS v. THE STATE.

HILL, J. The verdict was supported by the evidence, and the assignments of error show no cause for reversal.

*Judgment affirmed. All the Justices concur.*

No. 1974. OCTOBER 12, 1920.

Indictment for murder. Before Judge Summerall. Ware superior court. January 10, 1920.

Waters and Broxton were jointly indicted for the murder of Truman and James McQuaig. They severed. Waters was tried and found guilty, with recommendation of life imprisonment. He excepted to the refusal of a new trial. The evidence for the State tended to show that the McQuaigs were shot and killed with guns fired by Waters and Broxton at a distance of fifty or sixty feet; that a quarrel had occurred a few minutes previously, concerning the use by the McQuaigs of a boat belonging to the employer of the accused; that the McQuaigs understood that this was settled and had started off when they were shot; that they were unarmed, and did not assault or menace the accused. For the defense it was contended that the McQuaigs were advancing on the accused with open knives; that they were killed by

Broxton, not by Waters, who fired his gun into the ground to frighten them, etc. The special grounds of the motion for new trial were, in brief:

(1) That the court, in charging the jury, used the expression, "the presumption of innocence is on his side of the case, and continues," etc., when it should have been charged that the accused entered upon the trial with the presumption of innocence in his favor. Also the expression, "make good," instead of "establish," in charging that if the State had "failed to make good by proof the material allegations in the indictment," the jury would not be authorized to convict the accused.

(2) That in charging on dying declarations the court expressed an opinion of what was proved, by using the words, "The alleged statement made by the decedent is admitted to the jury merely upon prima facie evidence of its verity." In the same connection it was charged that it was the province of the jury to determine whether the evidence submitted showed a dying declaration in fact; and that in order for such declaration to be admissible it must appear from the evidence that the declarant was in the article of death, conscious of his condition, etc.

(3) That the court erred in not charging the jury with reference to evidence other than sworn testimony (although the charge did refer to the entire evidence); accused contending that the omission was harmful, because of testimony that a knife was found near a blood spot where one of the deceased fell, which knife (as Broxton and Waters contended) was in the hand of deceased-as he advanced on Broxton.

(4) That the court erred in not charging in reference to voluntary manslaughter as applicable to cases of mutual combat.

(5) That the court received, over objection made when it was offered, testimony of the father of the deceased, that James McQuaig, one of the deceased, said: "Beloved Lord, have mercy on me. Don't hold me accountable for this deed; for I am not to blame. Tell Mama I am not to blame for this killing. Put me down, Papa. I can't stand it. I crawled here." Also, that James McQuaig told the witness that Truman McQuaig did not move at all after he was shot. Upon objection that this was hearsay and no part of a dying declaration, and was prejudicial and harmful, the court ruled: "I will let it stay in for the

present." On the following day, at the conclusion of the evidence, the court, upon an admission in open court by the State's counsel that they had no objection to the sustaining of the motion to exclude the testimony referred to, ruled it out. It was contended that the court erred in not ruling it out in the first instance, in leaving it before the jury until the evidence was closed, and in not instructing the jury to disregard and not consider it.

(6) That the court overruled a motion to declare a mistrial upon the making of the following argument by one of counsel for the State: "You cannot afford, gentlemen, to pay any attention to the evidence of Broxton to the effect that he killed both of the McQuaig boys; because he is jointly indicted with Waters, and is to be tried as soon as this case is finished; and we know that in the preparation of his defense Waters could have induced the witness Broxton to testify for him and claim that he did all the killing, upon the trial of this case, and then, upon the trial of Broxton which is to follow, to have Waters, the defendant in this case, swear in behalf of Broxton."

(7) That the court refused to grant a continuance on account of the absence of two witnesses for the accused, who were sick and unable to come to court. The State's counsel admitted what it was expected to prove by one of these. By the other it was expected to prove, as counsel for the accused stated, that the witness went, very soon after the shooting and on the same evening, to the place where it occurred; that neither of the deceased made any dying statements or declarations as to the manner in which they were shot or as to the cause of their death; that no examination of the place was made on that afternoon or night, and on account of darkness there was no opportunity for such examination until the next morning; that witness found the hat of one of the deceased across the lake on the opposite side from where the shooting occurred, and in the direction of the home of deceased, one of whom was barefooted and wet from head to foot. Accused contended that this one was advancing in this condition for the purpose of attacking the accused, following him a distance of 150 yards or more in the direction of his home and to the place of the killing.

*Dickerson & Kelley* and *Parker & Parker,* for plaintiff in error. *Clifford Walker, attorney-general, A. B. Spence, solicitor-general, M. C. Bennet, Wilson & Bennett,* and *Blalock, Redding & Stinson,* contra.